IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AQUATECH INTERNATIONAL CORPORATION, a Pennsylvania corporation, and DEBASISH MUKHOPADHYAY, an individual,<br><br>                              Plaintiffs,<br><br><br>Vs.<br><br><br>N.A. WATER SYSTEMS, LLC, a Pennsylvania Limited Liability Company; and VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT,  a French Corporation,<br><br>                              Defendants | Case No. |

## **COMPLAINT**

Aquatech International Corporation and Debasish Mukhopadhyay (hereinafter collectively "the Aquatech Plaintiffs") bring this action for declaratory judgment relating to N.A. Water Systems, LLC, and Veolia Water Solutions & Technologies Support (hereinafter

1

collectively "the VWSTS Defendants"). U.S. Patent No. 7,815,804 B2 (hereinafter "the '804 OPUS Patent"). (Exhibit"1" hereto.)

## **PARTIES**

1.      Aquatech is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business in Washington County, Pennsylvania.

2.      Debasish Mukhopadhyay (hereinafter "Deb") is an individual residing in the State of California. Deb is the owner, and licensor, of U.S. Patent Nos. 5,925,255 (the "255 patent") and 6,537,456 (the "456 patent") (collectively, the -HERO Patents"). (Exhibits "2" and "3" respectively.)

3.      Upon information and belief, N.A. Water Systems, LLC ("NAWS") is a Pennsylvania limited liability company and a direct subsidiary of Veolia Water Solutions & Technologies North America, Inc. and has its principal place of business at Airside Business Park, 250 Airside Drive, Moon Township, PA 15108.

4.      Upon information and belief, Veolia Water Solutions & Technologies Support ("VWSTS") is a privately-held joint-stock company with limited liability (Societe anonyme), organized and existing under the laws of France, having its registered head office at L'Aquarene, 1, Place Montgolfier, Saint-Maurice CEDEX, France 94417 .

5.      Upon information and belief VWSTS is, and has been (either itself as currently named, or in its prior name of OTV, SA) since at least January 30, 2007, an assignee of rights, title, and interest in and to the '804 patent, and purports to be the sole owner of the '804 patent.

## JURISDICTION AND VENUE

6.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

7.     This Court has subject matter jurisdiction under the provisions of 28 U.S.C. §§1331, 1338(a), and 1338(b).

8.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391 (c), 1391(d), and 1400(b) because the VWSTS Defendants have regularly conducted business in this judicial district and are subject to personal jurisdiction in this judicial district.

9.     This Court can enter the declaratory relief sought in this Complaint because this case presents an actual case and controversy, and is within the Court's jurisdiction pursuant to the provisions of the Federal Declaratory Judgments Act, 28 U.S.C. § 2201.


## NATURE OF THIS ACTION

10.     The Aquatech Plaintiffs seek a Declaratory Judgment that the claims of U.S. Patent No. 7,815,804 B2 ("the '804 OPUS patent") are invalid under one or more provisions of 35 U.S.C. §§ 101,102, 103, 112 and/or 116.   The Aquatech Plaintiffs seek a Declaratory Judgment that the claims of the '804 OPUS patent are unenforceable due to inequitable conduct. The Aquatech Plaintiffs further seek a Declaratory Judgment that Plaintiffs' licensing, sale, offers for sale, or operation of water treatment processes that conform to claims of the HERO Patents do not infringe the claims of the '804 OPUS Patent. An actual controversy over the validity and enforceability of the '804 OPUS Patent and its alleged infringement exists between the Aquatech Plaintiffs and the VWSTS Defendants, as

evidenced by the fact that the VWSTS Defendants have repeatedly threatened the Aquatech Plaintiffs' licensees, customers and potential customers with infringement of the '804 OPUS patent.

11.     In more detail, the VWSTS Defendants (including their predecessors in interest) obtained the '804 OPUS Patent through specific, intentional deceptions, submitted under oath, to the United States Patent and Trademark Office.

12.     The VWSTS Defendants' intentional deceptions include:
        a) The VWSTS Defendants' inequitable conduct arising from Defendants' failure to disclose highly material information, and the misrepresentation and/or submission of false material information to the United States Patent and Trademark Office ("PTO") with a specific intent to deceive the PTO;
        b) The VWSTS Defendants knew of the information and knew or should have known of the materiality of the information,
        c)  The actions of the VWSTS Defendants were part of a deliberately planned and carefully executed scheme carried out with specific intent to deceive the PTO, and
        d) The VWSTS Defendants have not provided a credible explanation for the withholding of such material information.

13.     LNSP Nagghappan ("Nagghappan"), a NAWS employee and a named inventor in the '804 patent, and/or his prosecuting attorneys, sought a patent for its process without disclosure during patent prosecution of known, highly material prior art. After more than thirty months of prosecuting the application, Nagghappan and the purported sole patent owner VWSTS,  with assistance of employees and/or counsel of Defendant VWSTS's related company, namely Defendant NAWS, managed to obtain the '804 patent by their intentional omissions, and intentional misrepresentations. Known, highly material prior art which was not disclosed to the PTO included the strikingly similar HERO Patents. Additionally, other prior art processes and apparatus which were relevant and material to the examination of the application that matured into the '804 patent were withheld from disclosure to the PTO.

4

14.   On information and belief, Nagghappan and the VWSTS Defendants pursued the issuance of the '804 OPUS patent that was derived in "whole cloth" from the prior art processes. A fair side by side comparison of the prior art processes with the claims of the '804 OPUS patent illustrate the substantial similarities in the processes. The prior art HERO Patents were known to the applicant and/or his prosecuting attorneys at least as early as December 2006. The prior art processes and equipment installations using the HERO® processes were material and known to be material to the examination of the application by the VWSTS Defendants, Nagghappan and/or agents acting on their respective behalves. The failure        of        Nagghappan,        and        the        VWSTS Defendants and/or their respective agents was intentional, and resulted in the failure of the Patent Office Examiner to have the opportunity to consider such invalidating prior art. The VWSTS Defendants inequitable conduct renders the '804 patent invalid and unenforceable. The Aquatech Plaintiffs request that this case should be deemed exceptional and that the Aquatech Plaintiffs should be awarded its reasonable attorney fees.

15.   On information and belief, Larry L. Coats, the VWSTS Defendants' representative in the prosecution of the '804 patent owed a duty of candor and good faith to the United States Patent and Trademark Office ("PTO") and had a duty to disclose information material to patentability of the inventions claimed in the '804 patent during the prosecution and up to the date of issuance of the '804 patent pursuant to 37 C.F.R. § 156 and MPEP §§ 2001, 2001.01, 2001.04. Mr. Coats engaged in inequitable conduct by intentionally failing to submit material information to the PTO, and and/or by submitting false and misleading information to, the PTO in the course of prosecuting and ultimately obtaining the '804  patent. As a result, Mr. Coats violated the duty of good faith and candor to the PTO, with an specific intention to deceive the PTO. All  claims of the '804 patent are therefore unenforceable because of this inequitable conduct. Without limiting the generality of the above averments, the inequitable conduct included, but was not limited to, the conduct set forth in paragraphs 67 through 73.

## THE AQUATECH PLAINTIFFS' HERO PROCESS

16.     The Aquatech Plaintiffs specialize in industrial water purification technologies for the electricity generation, chemical, petrochemical, pharmaceutical, microelectronics, and other industries. During the past 15 years, Deb as the owner of the inventive HERO Patents has licensed his unique HERO water purification technologies to the most preeminent industry leaders such as General Electric, Intel, and Aquatech among others. (Exhibit "4" hereto)

17.     Deb's HERO® processes use the patented high efficiency reverse osmosis technologies that is currently being employed globally in a multitude of industries including power generation, petrochemical and microelectronics.

18.     Deb's well recognized HERO® water treatment processes have proven effective in treating high silica, fouling, and difficult-to-treat industrial waste streams since 1996. Applications include zero liquid discharge, cooling tower blowdown treatment, recycle/reuse, and treating water supplies with high organic content (including treated effluents). The HERO® processes are robust and forgiving processes which utilize industry standard and proven hardware components. Recoveries in excess of 90% result in economical water reuse and environmental benefits. HERO process advantages, beyond the simplicity of design and operation, include lower total installed cost, lower operating costs, and lower life cycle costs when compared to alternate process designs, whether other prior art reverse osmosis processes, or typical brine concentrators used in zero liquid discharge applications.

19.     The VWSTS Defendants contend that their competing OPUS™ processes (Exhibit "5") are protected by the '804 patent and that the Aquatech Plaintiffs' HERO® processes infringe the '804 OPUS patent. Defendants' contentions of Plaintiffs' alleged infringement of the '804 OPUS patent have been widespread and made the VWSTS Defendants repeatedly to coerce and to intimidate customers and potential customers to choose the VWSTS Defendants' OPUS process under threat of patent litigation.

20.     The VWSTS Defendants are direct competitors of the Aquatech Plaintiffs in providing water treatment processes for industrial applications, and as regards their respective use of the HERO Patents and of the OPUS '804 patent.

21.     As set forth herein, the VWSTS Defendants knew, or reasonably should have known, that the VWSTS Defendants' contention that the Aquatech Plaintiffs' HERO processes infringe the '804 OPUS patent is false.

22.     An actual case and controversy exists because the VWSTS Defendants have asserted threats of infringement of the '804 OPUS patent to intimidate customers, and potential customers, not to contract with the Aquatech Plaintiffs, and have unfairly and unlawfully hindered competition in industrial waste water treatment projects which utilize, or which have proposed to utilize, or which may benefit from utilizing the HERO processes.

## THE '804 PATENT

23.     On information and belief, U.S. Patent No. 7,815,804 B2, was issued October 10, 2010, entitled "Method for Treating Wastewater or Produced Water" some ten (10) years after the issuance of the HERO Patents. As shown by Exhibit "6", the '804 OPUS patent is assigned to Defendant VWSTS.  On information and belief, Defendant VWSTS purports to be the sole owner of the '804 patent.  On information and belief, Defendant NAWS purports to be a co-owner of the '804 OPUS patent.

24.     The '804 OPUS patent matured from application Serial No. 11/609,659, filed December 12, 2006, originally naming, as joint inventors, Joseph E. Zuback and LNSP Nagghappan. On April 4, 2007, a petition under 37 CFR 1.47(a) was filed with the U.S. Patent and Trademark Office requesting, in effect, that LNSP Nagghappan be allowed to proceed with the application on behalf of himself and a non-signing inventor, Joseph E. Zuback.

25.     In pertinent part, the '804 OPUS patent is directed to a method or process for treating wastewater containing high organics, silica, boron, hardness, and suspended and dissolved solids. The method includes degasifying the wastewater for the removal of dissolved gases and thereafter softening the wastewater. At least a portion of the softening step may, in an embodiment, be provided using a chemical softener.  At least a portion of the softening step may, in an embodiment, be provided using an ion exchange system. After the softening step, the wastewater is directed through a media filter or membrane which removes additional solids and precipitants. Thereafter the wastewater is directed through a sodium ion exchange that further softens the wastewater. The effluent from the ion exchange is directed through a cartridge filter and the effluent from the cartridge filter is directed through one or more reverse osmosis units. At a selected phase of the OPUS process, prior to the wastewater reaching the reverse osmosis unit or units, the pH of the wastewater is raised and maintained such that the pH of the wastewater reaching a reverse osmosis unit is at a pH of about 10.5, or greater than 10.5.

## THE VWSTS DEFENDANTS' FALSE INFRINGEMENT CONTENTIONS REGARDING THE '804 OPUS PATENT AND THE HERO TREATMENT PROCESSES

26.     Zero liquid discharge (ZLD) wastewater recycling technology will be installed at the Russell City Energy Center (RCEC), a new 600-megawatt (MW) natural gas and steam combined-cycle power plant being built in Alameda County, California.

27.     RCEC is the first power plant in the country to be built under a voluntary agreement with the U.S. Environmental Protection Agency to meet stricter limits on greenhouse gases and other emissions. The plant is expected to enter commercial service in 2013 and supply energy to the San Francisco Bay region.

28.     As part of the plant's arsenal of technologies to improve energy efficiency and reduce environmental footprint, the ZLD system will be used for onsite wastewater treatment and recycling. Calpine Corporation (Calpine) and Bechtel Enterprises Holdings, Inc. (Bechtel), known as the Calpine/Bechtel Joint Development, have proposed to construct, own, and operate the RCEC plant as a merchant energy generating facility.

29.     Power plants such as RCEC are major industrial consumers of water to support their operations - chiefly for power plant cooling, steam production, and other production processes. But with the United States and international communities seeking to preserve the world's dwindling supplies of fresh water, the public and the private sectors have begun collaborating more closely to increase the deployment of industrial water recycling technologies.

30.     On or about August 23, 2010, Aquatech presented a proposal to Bechtel, a potential Aquatech customer, utilizing the Aquatech Plaintiffs' HERO technologies for the treatment of industrial waste water at the RCEC power plant.

31.     The HERO® process proposed to Bechtel by the Aquatech Plaintiffs embodied the same treatment technologies disclosed in Deb's HERO Patents (Exhibits "2" and "3").

32.     On information and belief, during this same time frame, Defendant NAWS also presented a competing proposal to Bechtel, proposing to utilize a version of the VWSTS Defendants' OPUS process that Defendant NAWS contends, in separate litigation, is covered by the '804 OPUS patent.

33.     Between September 1, 2010, and October 30, 2010, Aquatech and the potential Aquatech customer had numerous discussions concerning the Aquatech Plaintiffs' proposed HERO® process, how it worked, and the results that the potential customer could expect if it implemented the HERO® process.

34.     During such time, Mark Boone, a sales representative acting on behalf of the VWSTS Defendants, stated to Bechtel that use of the HERO® process at RCEC would subject it to exposure for potential liability for infringement of the VWSTS Defendants' patents related to the OPUS process.   Bechtel sought assurances that the HERO® process did not infringe the VWSTS Defendants' patents and asked whether Aquatech would indemnify Bechtel against potential liability related to the use of the HERO® process.

35.     Aquatech assured Bechtel that the use of Plaintiffs' HERO® process would not infringe the VWSTS Defendants' patents and further agreed to indemnify Bechtel against patent infringement claims related to the use of the HERO® process.

36.     On information and belief, since November 2010 to the present, the VWSTS Defendants by and through their respective authorized employees, agents, and/or representatives, have issued such threats of patent infringement to potential customers of the Aquatech Plaintiffs, and to Deb's licensees and their other potential customers.

37.     On information and belief, at the time such threats of patent infringement were made by the VWSTS Defendants' employees, agents, and/or representatives, such employees, agents, and/or representatives were authorized by the VWSTS Defendants to make such statements to the Deb's licensees and their other potential customers.

38.     The VWSTS Defendants knew, or reasonably should have known, that their contention that the HERO® process infringes the '804 OPUS patent is, and was, false.

39.     Defendants made these false statements to harm the Aquatech Plaintiffs' reputation, deter the potential Aquatech customer and other potential customers from working with the Aquatech Plaintiffs, and to prevent legitimate competition between the VWSTS Defendants and the Aquatech Plaintiffs for the licensing and use of Plaintiffs' HERO technologies.

40.     The VWSTS Defendants' actions were not privileged and were not undertaken for any legitimate business purpose, but instead for the purpose of deliberately and maliciously harming the Aquatech Plaintiffs' business interests.

41.     The Aquatech Plaintiffs seeks a declaration confirming their continued right to promote, license, market, and sell the HERO processes in the industrial waste water industry as well as all other markets.

42.     An actual case and controversy exists because the VWSTS Defendants have asserted the '804 OPUS patent to intimidate customers, and potential customers, not to utilize the Aquatech Plaintiffs' HERO technologies in treatment of industrial waste water streams and other similar projects.

43.     Moreover, other water treatment projects similar to a potential Aquatech customer's project are forthcoming and, unless deterred by the Court, a substantial risk exists that the VWSTS Defendants will again wrongfully assert the '804 OPUS patent against potential customers in an attempt to intimidate such prospective customers to reject the Aquatech Plaintiffs' HERO processes in favor of the VWSTS Defendants' OPUS process.

44.     The VWSTS Defendants have harmed and will continue to harm the Aquatech Plaintiffs' economic interest by impairing their ability to promote, license, market, and sell water treatment systems which practice the patented HERO® processes.

## DEFENDANTS' INEQUITABLE CONDUCT COMMITTED DURING THE PROSECUTION OF THE PATENT APPLICATION THAT MATURED TO THE '804 OPUS PATENT

45.    During the VWSTS Defendants' prosecution of the patent application Serial Number 11/609,659, ("the '659 application") that matured to the '804 patent, neither applicant LNSP Nagghappan, nor his prosecuting attorneys, nor any individual subject to the requirements of 37 CFR 1.56 (c) disclosed the strikingly similar prior art HERO patents (Exhibits "2" and "3") to the Examiner. At the time the '659 application was prosecuted, Nagghappan (and individuals subject to such requirements) knew that the HERO patents existed, and that each of the HERO patents were, and are, material to the patentability of the '804 OPUS patent.

46.    Specific intent to deceive in the failure of the VWSTS Defendants to disclose the HERO patents, and other material prior art, while the '659 application was pending is evidenced at least by the applicant's (and/or his prosecuting attorneys' and/or any other individual subject to the requirements of 37 CFR 1.56(c)) knowledge of the HERO patents, and Defendants knowledge of the high degree of materiality of the HERO patents as prior art under 35 USC 102 and 103, and Defendants' decision to withhold disclosure of the HERO patents as well as to withhold disclosure of other material prior art set forth in paragraphs 42 through 47.

47.    During the prosecution of the '659 application, the applicant LNSP Nagghappan, and his prosecuting attorneys each failed to disclose prior art relating to the VWSTS Defendants' San Ardo Pilot System and "on sale" bars relating to the VWSTS Defendants' prior art activities at Chevron's San Ardo facility. This prior art relates to NAWS high pH RO process with a water softener in the pre-treatment train to remove hardness, and was under the VWSTS Defendants' possession, custody and control.   At the time the VWSTS Defendants were prosecuting the '659 application, Nagghappan (and individuals subject to applicable requirements) knew or should have known that the San Ardo Pilot System prior art and related San Ardo prior art activities existed, and that such activity included prior art material to the patentability of the '804 OPUS patent.

48.     Specific intent to deceive the PTO includes the VWSTS Defendants' failure to disclose the San Ardo related prior art, while the '659 application was pending.  Such specific intent is evidenced at least by Nagghappan and/or his prosecuting attorneys' and/or other individuals subject to the requirements of 37 CFR 1.56(c)'s knowledge of the San Ardo prior art, and the knowledge of the high degree of materiality of the San Ardo Pilot System as prior art under 35 USC 102 and 103, and by the VWSTS Defendants' decision to withhold from disclosure to the PTO of the San Ardo prior art.

49.     Moreover, on information and belief, Nagghappan and/or his prosecuting attorneys made material misrepresentations, with the specific intent deceive the US Patent and Trademark Office, as to the true "inventorship" of the claims issued in the '804 patent.

50.     During the prosecution of the '659 application, Nagghappan and/or his prosecuting attorneys, filed a Declaration of Larry L. Coats, averring that subject matter set forth in the claims of the '804 patent was the "invention" of joint inventors, i.e., Joseph E. Zuback and LNSP Nagghappan. (Exhibit "6")

51.     The Declaration of Larry L. Coats represented, in pertinent part, as follows:

"2.     Upon information and belief, the Assignee in this case, OTV SA S.A. and its affiliate, N.A. Water Systems, LLC (individually and collectively "N.A. Water Systems"), believe that Mr. Joseph E. Zuback may be a co-inventor of one or more of the claims described in the patent application.

3.     At the time of the conception of the invention of one or more claims in the present patent application, it is believed that Mr. Zuback and Mr. Nagghappan were employed by the predecessor-in-interest by merger to N.A. Water Systems, which, at the time, was an affiliate of United States Filter Corporation (now WASCO LLC). Subsequently, certain other affiliates of United States Filter Corporation were sold to Siemens Corporation, and after the sale, Mr. Zuback left

the employment of N.A. Water Systems and became employed with Siemens Corporation.

4.      Siemens Corporation, in some respects at least, is considered a competitor of N.A. Water Systems. Hence, N.A. Water Systems has been reluctant to contact Mr. Zuback directly. Rather, N.A. Water Systems decided to attempt to gain Mr. Zuback's cooperation by working through Siemens Corporation, and particularly, Ms. Deborah M. Newell, Senior Counsel of Siemens Corporation.

5.      Sometime prior to January 19, 2007, Mr. Ken Kubrick, Legal Counsel to N.A. Water Systems contacted Ms. Newell and explained that N.A. Water Systems was planning to file a patent application in which it believed that a Siemens' employee, Mr. Zuback, may be a co-inventor and obligated to execute the patent application. Ms. Newell_indicated to Mr. Kubrick that a conference call, involving Mr. Kubrick, others at N.A. Water Systems, along with Mr. Zuback and Mr. Gary Ganzi (a Siemens' executive having IP responsibility) would be appropriate. That conference was held on January 19, 2007. Participating in that conference were Ms. Newell, Mr. Zuback, Mr. Ganzi, Mr. Kubrick, and Mr. Chuck Blumenschein and Mr. Craig Yendell from N.A. Water Systems. At that time the technology relating to the patent application was discussed. Mr. Zuback and Mr. Ganzi appeared to have reservations about the patentability of the technology. During the course of the call, Mr. Zuback identified a number of pieces of prior art that he thought impacted the patentability of this technology.

***

7.      On March 22, 2007, Mr. Kubrick sent a letter to Ms. Newell concerning this patent application, and included a request for Mr. Zuback to execute the Declaration and Power of attorney. See Exhibit 1 attached. A full copy of the application, along with the drawings, a Declaration and Power of Attorney, and an Assignment, was included.

8.      The letter, as it states, was directed to Ms. Newell, but with a request to present the patent application and the associated papers to Mr. Zuback. Again, this

was done because Siemens Corporation may be viewed as a competitor, and because Mr. Zuback is employed now by Siemens Corporation.

9.      As of April 4, 2007, N.A. Water Systems has not received a reply from Ms. Newell or Mr. Zuback.

10.     Upon information and belief, N.A. Water Systems believes that because of the competitive positions that the parties stand in, that Mr. Zuback is reluctant to execute the patent application. N.A. Water Systems has requested that he execute the application, and based on the responses to date from both Siemens Corporation and Mr. Zuback, there appears to be a reluctance to do so."

52.     After Mr. Zuback reaffirmed his belief that the subject matter of the claims of the '659 application was not patentable, Nagghappan and/or his prosecuting attorneys, intentionally misrepresented to the U.S. Patent Office that LSNP Nagghappan was the "sole inventor" of such subject matter. In truth, at the time the VWSTS Defendants' misrepresentations were made, Mr. Zuback was, and is, a "joint inventor" of the claimed subject matter.

## COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 7,815,804 B2
## 28 U.S.C. §§ 2201, 2202; 35 U.S.C. § 271

53.    The Aquatech Plaintiffs reallege and incorporates by reference the preceding paragraphs 1 through 52 of the Complaint.

54.    The Aquatech Plaintiffs are entitled to a declaratory judgment that water treatment systems practicing the HERO® processes, do not infringe the '804 OPUS Patent, and that the Aquatech Plaintiffs have not contributed to or induced infringement of the '804 OPUS patent.

55.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the Aquatech Plaintiffs and the VWSTS Defendants concerning the infringement of the '804 OPUS patent.

56.    After a reasonable opportunity for further investigation and discovery, the Aquatech Plaintiffs believe that it is likely to have further evidentiary support for the conclusion that the claims of the '804 OPUS Patent are invalid for failure to comply with the requirements of the Patent Laws of the United States as set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.

57.    The Aquatech Plaintiffs are entitled to a declaratory judgment that water treatment systems practicing its HERO® processes do not infringe any valid claim of the '804 patent, either literally or under the doctrine of equivalents, and that the Aquatech Plaintiffs, by promoting the HERO processes and selling equipment to practice the HERO processes, do not indirectly infringe the '804 OPUS patent.

58.    The Aquatech Plaintiffs seek a declaration that they have not directly infringed and do not directly infringe the '804 OPUS Patent either literally or under the doctrine of equivalents. A judicial declaration is necessary and appropriate at this time in order that the Aquatech Plaintiffs may ascertain their rights and duties with respect to the '804 OPUS Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sales of their HERO processes and equipment for practicing the HERO processes.

59.    This is an exceptional case, and the Aquatech Plaintiffs are entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.


## COUNT II
## DECLARATION JUDGMENT OF PATENT INVALIDITY
## 28 U.S.C. §§ 2201, 2202, 35 USC. §§ 102. 103. and 112

60.    The Aquatech Plaintiffs reallege and incorporate by reference the preceding paragraphs 1 through 59 of the Complaint.

61.    Based on the prosecution history of the '804 patent, and the prior art cited during prosecution, as well as other prior art, the patent claims in the '804 patent are invalid.

62.    The '804 patent and each of the claims therein are invalid for failure to comply with one or more the requirements of 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, 132, 171, 172, and 251.

63.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the Aquatech Plaintiffs and NAWS as to whether there exists any valid and enforceable claims of the '804 patent.

64.     The Aquatech Plaintiffs are entitled to a declaratory judgment that all claims in the '804 patent are invalid. A judicial declaration is necessary and appropriate at this time in order that the Aquatech Parties may ascertain their rights and duties with respect to the '804 patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of their HERO processes and equipment to practice the HERO processes.

65.     A person is entitled to a patent unless he himself did not invent the subject matter sought to be patented, 35 U.S.C. § 102(f). The '804 patent is invalid for omission, with deceptive intent, of a true inventor.

66.     This is an exceptional case, and the Aquatech Plaintiffs are entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT III
## DECLARATION JUDGMENT OF UNENFORCEABIILTY
### 28 U.S.C. §§ 2201. 2202: 35 USC 102. 103

67.     The Aquatech Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of the Complaint.

68.     On information and belief, Mr. Coats failed to cite material information to the PTO during prosecution of the application that resulted in the '804 patent. Mr. Coats filed the application that resulted in the unlawful issuance of' 804 patent.

69.     Mr. Coats failed to disclose the existence of the HERO patents and San Ardo prior art as required under 37 C.F.R. § 1.56 and MPEP §§ 2001.04, 2001.06(b) during the prosecution of the '804 patent. This information would have been material to the examination of the '804 patent, because it would have alerted a reasonable patent

examiner to a basis for the rejection of the application under 35 U.S.C. § 102 and/or 103. This prior art information would have been material to the patentability of the '804 patent and should have been disclosed to the PTO.

70.     On information and belief, Mr. Coats intended to mislead the PTO by intentionally failing to notify the examiner of the material prior art.

71.     On information and belief, Mr. Coats failed to notify the examiner of the material prior art with the specific intent of ensuring the issuance of the '804 patent without further rejections. Unwilling to delay the issuance of the '804 patent, Mr. Coats intentionally failed to notify the examiner of material information relating to the correct inventorship of the subject matter of the '804 patent even though his duty of disclosure, candor, and good faith  continued until the date of issuance of the patent pursuant to MPEP §§ 2001, 2001.01, and 2001.04.

72.     On information and belief, Mr. Coats specifically intended to mislead, and materially mislead, the patent examiner by intentionally withholding material information. As discussed above, Mr. Coats had knowledge of the withheld prior art, knew that the withheld prior art was material, and failed to disclose the prior art.  Mr Coats also withheld, and/or misrepresented information concerning the correct inventorship to the PTO during prosecution of the application that led to the '804 patent.

73.     On information and belief, as a direct and proximate result of Mr. Coats' inequitable conduct, the PTO issued the '804 patent. The VWSTS Defendants have received the benefit of improperly obtaining the grant of such patent rights.

74.     In view of the inequitable conduct before the PTO in the prosecution of the '804 patent, the '804 patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, the Aquatech Plaintiffs pray for the following relief:

1.     A declaration that water treatment processes practicing the HERO® technologies does not infringe the claims of the '804 patent;

2.     A declaration that each of the claims of '804 patent is invalid;

3.     A declaration that the '804 patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office;

4.     A declaration that this is an exceptional case, and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

5.     That the Court award the Aquatech Parties such other and further relief as this Court may deem appropriate, just and proper under the circumstances.


DATE:      April 4, 2012                          Respectfully submitted,


                                                 BOSWELL, TINTNER & PICCOLA



                                                 By
                                                 Kevin David Gillespie
                                                 BOSWELL, TINTNER & PICCOLA
                                                 315 North Front Street
                                                 Harrisburg, PA           17101
                                                 Telephone:   717/236-9377
                                                 Facsimile:   717/236-9316

20

OF COUNSEL:

Frank Frisenda (CA SB# 85580)
FRISENDA, QUINTON & NICHOLSON
11601 Wilshire Blvd., Suite 500
Los Angeles, California 90025
Telephone:    702/792-3910
Facsimile:     702/436-4176

ATTORNEYS FOR THE AQUATECH PARTIES