**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AQUATECH INTERNATIONAL CORPORATION** *A Pennsylvania corporation,* **DEBASISH MUKHOPADHYAY** *an individual,* )<br>)<br>)<br>)<br>) | |
| Plaintiffs, )<br>)<br>) | |
| v. ) | Civil Action No. 12-435 |
| )<br>**N.A. WATER SYSTEMS, LLC** )<br>*a Pennsylvania Limited Liability Company,* )<br>**VEOLIA WATER SOLUTIONS &** )<br>**TECHNOLOGIES SUPPORT** )<br>*a French Corporation,* )<br>)<br>Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**CONTI, District Judge.**

## I.    Introduction

Pending before the court is the Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6), (ECF No. 33), and Brief in Support (ECF No. 34), filed by defendants N.A. Water Systems, LLC ("N.A. Water") and Veolia Water Solutions and Technologies Support ("Veolia" and together with N.A. Water, "defendants"); the Response in Opposition, (ECF No. 35), and Request for Judicial Notice (ECF No. 36), filed by plaintiffs Aquatech International Corp. ("Aquatech") and Debashish Mukhopadhyay ("Deb" and together with Aquatech, "plaintiffs"); and defendants' Reply Brief. (ECF No. 39.) The present motion seeks dismissal of plaintiffs' second amended complaint, (ECF No. 31), which was filed after the court granted defendants' prior motion to dismiss at a hearing on February 13, 2013. The court held a hearing on the instant motion on

June 13, 2013, at which time the court gave its preliminary assessment and granted defendants'
motion to dismiss without prejudice. This memorandum opinion sets forth the rationale for the
court's decision.

## II.    Background

### A.    Factual Background as Alleged in the Second Amended Complaint

On March 22, 2013, plaintiffs filed a four-count second amended complaint seeking
declaratory judgment relief pursuant to 28 U.S.C. §§ 2201 and 2202 with respect to United States
Patent Number 7,815,804 (the "'804 Patent," also known as defendants' "OPUS Process").
Plaintiffs specifically request declarations that: (1) their patented water treatment processes
practicing the HERO technologies do not infringe the claims of the '804 Patent (count 1); (2)
each of the claims of the '804 Patent is invalid (count 2); and (3) the '804 Patent is unenforceable
due to inequitable conduct before the United States Patent and Trademark Office (count 3). In
count 4 plaintiffs assert a state law claim of tortious interference with a prospective contractual
relationship. (ECF No. 31.) The state law claim had not been previously asserted.

#### 1.    The Parties

Aquatech is a Pennsylvania corporation with its principal place of business in
Washington County, Pennsylvania. (Id. ¶1.) Deb is a California resident, and is the owner and
licensor of United States Patent Numbers 5,925,255 ("'255 Patent"), and 6,537,456 ("'456
Patent") (collectively, the "HERO Patents"). (Id. ¶2.) Plaintiffs allege that N.A. Water is a
Pennsylvania limited liability company with its principal place of business in Moon Township,
Pennsylvania. (Id. ¶3.) N.A. Water is alleged to be a direct subsidiary of Veolia Water Solutions
& Technologies North America, Inc., which is a French privately-held joint-stock company with

limited liability. (Id. ¶¶ 3-4.) Plaintiff alleges that Veolia is an assignee of rights, title, and interest in and to the '804 Patent, and purports to be the sole owner of the '804 Patent. (Id. ¶ 5.)

### 2. The Basis for Plaintiffs' Claims

With respect to the federal claims, plaintiffs assert that an actual controversy exists because defendants allegedly threatened plaintiffs' licensees, customers, and potential customers with infringement of the '804 Patent and that such threats of infringement are likely to recur in the future. (Id. ¶ 13.)

### 3. Plaintiffs' HERO Process

Plaintiffs' HERO process is a patented high-efficiency water purification technology that uses reverse osmosis technology to treat industrial waste streams, and is currently in use in many industries, including power generation, petrochemical, and microelectronics. (Id. ¶ 14.) Plaintiffs allege that Deb's licensees have "designed and built, and are now designing and proposing dozens of HERO water and waste-water treatment projects in the U.S. and throughout the world." (Id. ¶ 16.) Licensees often incur enormous costs when proposing new projects. (Id. ¶ 16.) As part of the proposal process, the licensees include variations of the processes and related equipment for performing the HERO process. (Id. ¶ 17.) As in the original complaint, plaintiffs allege that "there is not just one HERO process, but a wide number of HERO treatment process variations which have been used, are using [sic] used, have been proposed, and are being proposed currently." (Id. ¶ 18.) Plaintiffs specifically allege two HERO process variants: Aquatech's proposal to Bechtel Enterprise Holdings ("Bechtel") for the Russell City Energy Center ("RCEC"); and Aquatech's proposal to Kiewit Power Constructors for the Pio Pico Energy Project. (Id.) Plaintiffs allege that Aquatech is currently drafting similar proposals involving HERO process variants in the next several months. (Id.)

### 4.  The '804 Patent

Plaintiffs allege that the '804 Patent was issued on October 10, 2010, approximately ten years after the issuance of plaintiffs' HERO Patents. The '804 Patent had joint inventors: LNSP Nagghappan on behalf of himself and a non-signing inventor, Joseph E. Zuback. (Id. ¶¶ 51-53.)

### 5.  Defendants' Alleged Threats of Infringement

The RCEC is a 600-megawat power plant being built in California and is expected to enter commercial service this year. (Id. ¶ 19.) The RCEC will employ zero liquid discharge wastewater recycling technology, and will be constructed by Bechtel and a subsidiary. (Id. ¶ 21.) Plaintiffs allege that in August 2010, they presented a proposal to Bechtel utilizing the HERO technologies for the treatment of industrial wastewater at the RCEC. (Id. ¶ 23.) The HERO process that plaintiffs proposed to Bechtel embodied some of the same treatment technologies disclosed in Deb's HERO patents, and included improvements and additions thereto. (Id. ¶¶ 24-26.)

Plaintiffs allege that defendants presented a competing proposal to Bechtel which utilized a version of defendants' OPUS process that N.A. Water contends is covered by the '804 Patent. (Id. ¶¶ 27-29.) Between September 1, 2010 and October 30, 2010, plaintiffs had several discussions with Bechtel about the proposed HERO process, how it worked, and the results that Bechtel could expect if it were implemented. (Id. ¶¶ 24-27.) During the discussions a representative of defendants, Mark Boone, allegedly stated to Bechtel that using the HERO process at RCEC could subject it to potential liability for infringement of defendants' OPUS patents. (Id. ¶ 29.) In response, Bechtel sought assurances that the HERO process did not infringe the defendants' patents and asked if there was a likelihood that an injunction could issue against Aquatech if Bechtel used plaintiffs' proposal. (Id. ¶¶ 29-31.) Plaintiffs allege, on

information and belief, that from November 2010 to the present, defendants continued to issue threats of patent infringement to plaintiffs' licensees and potential customers with respect to the HERO process, but provide no factual allegations in support. (Id. ¶ 32.)

Plaintiffs also allege that their proposal for the Pio Pico Energy Center, to be built by Kiewit Power Constructors Co., includes several elements that "can reasonably be asserted by Defendants to meet the Claims of the '804 Patent." (Id. ¶¶ 38-42.) Plaintiffs attached a claim chart to the second amended complaint allegedly demonstrating how the Pio Pico Energy Center proposal potentially infringes the claims asserted in the '804 Patent. (ECF No. 31-7.)

Plaintiffs allege that licensees of the HERO Patents have presented many proposals to third-party customers and end-users which incorporate numerous process steps and related equipment that are not disclosed in the HERO Patents, and which are allegedly the subject of defendants' continuing threats in the market. (ECF No. 31 ¶ 43.) As in their previous two complaints, plaintiffs continue to assert that defendants contend that the HERO process infringes the '804 Patent, but only point to the Bechtel proposal and trade publication articles from 2010 and 2011 to support this assertion. (Id. ¶¶ 43-46, Exs. 9, 10.)[1]

Based upon information and belief, plaintiffs allege that from November 2010 until the present, defendants have made known to the industry that their OPUS process is "patented," allegedly raising concerns from plaintiffs' customers and potential customers. (Id. ¶ 45.) Finally, plaintiffs allege that an actual case or controversy exists based upon defendants' threats of infringement and hindrance of competition in the water treatment industry. (Id. ¶¶ 48-49.)

## 6.    New Claim in Second Amended Complaint

---

[1] These articles were provided to the court as attachments to plaintiffs' reply brief to the first motion to dismiss. (See ECF No. 15-1 at 9-18.)

Plaintiffs added a new claim in their second amended complaint; specifically, they allege tortious interference with a prospective contractual relationship with respect to the Bechtel project at RCEC, seeking damages for the loss of the contract with Bechtel. (Id. ¶¶ 88-99.) This claim was not asserted in their previous complaints.

## B.    Procedural History

Plaintiffs commenced this action by filing a complaint in this court on April 4, 2012, seeking a declaratory judgment of noninfringement, invalidity, and unenforceability with respect to the '804 Patent. (ECF No. 1.) The court granted defendants' motion to dismiss for lack of jurisdiction without prejudice at a hearing conducted on October 15, 2012, and gave plaintiff forty-five days  in which to file an amended complaint. Plaintiff filed an amended complaint (ECF No. 30) on November 30, 2012, which was also dismissed for lack of jurisdiction at a hearing conducted on February 13, 2013. Plaintiffs filed the instant second amended complaint on March 22, 2013.

Throughout proceedings in the present matter, defendants executed four covenants not to sue, which formed, at least in part, the basis for the court's decision to grant defendants' prior motions to dismiss. In the first covenant defendants waive the right "to assert any claim that the past or present use, sale, offers to sell, licensing, and/or marketing of processes described in the HERO Patents infringe [the '804 Patent]." (ECF No. 13-1 at 8.) In the second covenant defendants deny ever asserting, and specifically waive defendants' ability to assert, any infringement claim related to the proposed Bechtel process. (ECF No. 22-1 at 2.) The third covenant contains broader language than the first, and in it defendants waive the right to assert claims that the "processes described in the HERO patents **or covered by the claims in the HERO Patents**" infringe the '804 Patent. (ECF No. 30-1 at 3) (emphasis added). This covenant

was drafted in response to the discussion during the motion hearing on February 13, 2013. A fourth covenant was filed, further expanding defendants' waiver by defendants explicitly waiving the right to assert infringement claims with respect to the proposed Pio Pico Energy Center process. (ECF No. 34-1 at 2-3.) These four covenants form the basis of defendants' motion to dismiss the second amended complaint.

## III.    Standard of Review

### A.    Rule 12(b)(1) Standard

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction raises the issue whether the court has the power to hear the matter before it. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The burden of establishing jurisdiction lies with the party seeking to invoke the court's jurisdiction. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Mortensen, 549 F.2d at 891.

A Rule 12 (b)(1) motion to dismiss for lack of subject-matter jurisdiction may facially or factually challenge the court's jurisdiction. Mortensen, 549 F.2d at 891; Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)(citing Mortensen, 549 F.2d at 891). In reviewing a facial attack, a court considers the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff. See Gould, 220 F.3d at 176; Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). A facial challenge is a technical defect that occurs when the allegations in the complaint do not sufficiently illustrate the court's jurisdiction. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1350 (2d ed. 1990). In reviewing a factual attack, the court may consider evidence outside the pleadings, including affidavits. See Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir. 1997). When a court's power to hear a

case is at issue, a court is free to weigh the evidence regarding jurisdiction.  <u>Mortensen</u>, 549 F.2d

at 891-92.

**B.      Subject-Matter Jurisdiction in a Declaratory Judgment Action**

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "is not an independent basis for

establishing subject-matter jurisdiction." <u>Prasco, LLC v. Medicis Pharm. Corp.</u>, 537 F.3d 1329,

1335 (2008) (citing <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950)). To

establish subject-matter jurisdiction sufficient to survive a motion to dismiss pursuant to Rule

12(b)(1), a declaratory judgment plaintiff must "establish that an Article III case or controversy

existed at the time the claim for declaratory relief was filed." <u>Arris Group, Inc. v. British</u>

<u>Telecomms.</u>, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

The United States Supreme Court has established a baseline test for whether an Article III

case or controversy exists, requiring a determination of "'whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

<u>MedImmune, Inc. v. Genetech, Inc.</u>, 549 U.S. 118, 127 (2007) (quoting <u>Maryland Cas. Co. v.</u>

<u>Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)). Such a controversy must be "definite and

concrete," "real and substantial," and permit "a decree of a conclusive character, as distinguished

from an opinion advising what the law would be on a hypothetical state of facts." <u>Id.</u> at 127

(citing <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227 (1937)). Ultimately, a plaintiff seeking a

declaratory judgment must satisfy jurisdictional requirements by showing standing, ripeness, and

a lack of mootness. <u>Prasco</u>, 537 F.3d at 1338.

The mere existence of an adversely held patent is not adequate to establish declaratory

judgment jurisdiction. <u>Prasco</u>, 537 F.3d at 1338 (citing <u>Teva Pharm. USA, Inc. v. Novartis</u>

Pharm. Corp., 482 F.3d 1330, 1345 (Fed. Cir. 2007)). A subjective fear of future harm is also not sufficient. Id. An "economic injury alone is not sufficient to confer standing" to invoke declaratory judgment jurisdiction. Arris Group, 639 F.3d at 1374. Instead, plaintiffs must establish an injury in fact by alleging that the patentee has undertaken an affirmative act related to the enforcement of its patent rights. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007). Although specific threats of infringement litigation are not necessary to invoke declaratory judgment jurisdiction, ABB Inc. v. Cooper Indus., LLC, 635 F.3d 1345, 1348 (Fed. Cir. 2011), plaintiffs must provide sufficient information for the court to find that a real and immediate controversy exists between parties having adverse legal interests. Prasco, 537 F.3d at 1335-36. Finally, "[w]hile direct communication between a patentee and a declaratory plaintiff is not necessary to confer standing, the nature and extent of any communications between the declaratory plaintiff and the patentee are certainly relevant factors to consider" when determining whether an Article III case or controversy exists. Arris Group, 639 F.3d at 1378.

## IV.    Discussion

### A.    The Covenants not to Sue

Defendants argue that the four covenants not to sue divest this court of jurisdiction over plaintiffs' declaratory judgment claims. First, defendants maintain that Deb's claims are moot because they provided him a covenant not to sue that covers any process "described in the HERO patents or covered by the claims in the HERO patents." (ECF No. 13-1.)[2] Second, defendants

---

[2] Plaintiffs do not address the mootness argument with respect to Deb and the unnamed licensees. His claims, therefore, will be dismissed on the ground that the court already recognized that Deb's claims pursuant to the HERO Patents are covered by the covenants not to sue. (ECF No. 32 at 50.) The court also held that Deb does not have standing to assert the claims of his unnamed licensees, and plaintiffs allege no new facts to contradict that holding. (Id. at 50-51.)

argue that they provided covenants not to sue with respect to both the Bechtel and Pio Pico Energy Center processes, asserting that neither infringes the '804 Patent.

During the motion to dismiss hearing held on February 13, 2013, counsel for plaintiffs conceded that the covenant not to sue with respect to the Bechtel process was sufficient to defeat any declaratory judgment claims that plaintiffs may have:

> THE COURT: [Plaintiffs' counsel], if they have stated with this covenant that you can publish to the world that the Bechtel process doesn't infringe and they will not sue on that, so that can't happen again at Bechtel if you want to do business with them on that particular process, you couldn't sue them on that.
>
> [Plaintiffs' counsel]: It could on that particular one.
>
> THE COURT: You couldn't sue them on that.
>
> [Plaintiffs' counsel]: Right.
>
> THE COURT: So if you have some kind of an underlying claim and you don't want to assert it, that's your choice, but you don't really have a declaratory judgment action that relates to the Bechtel process any longer.
>
> [Plaintiffs' counsel]: **True. The covenant not to sue moots that limited scope that the defendants have given**.

(ECF No. 32 at 10) (emphasis added). The fourth covenant not to sue is substantially the same as the covenant with respect to the Bechtel project, and therefore appears to apply equally to the Pio Pico Energy Center project. (ECF No. 34-1.) Plaintiffs fail to allege any facts indicating that defendants made threats to bring an infringement action with respect to the Pio Pico Energy Center proposal.

Covenants not to sue have been found sufficient to divest district courts of jurisdiction to hear a declaratory judgment action, but they are not necessarily conclusive. Compare Benitec Australia, LTD., v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007) (finding that a covenant not to sue precluding future infringement actions served to eliminate declaratory judgment

jurisdiction) with SanDisk Corp., 480 F.3d at 1372 (finding that a verbal statement by patent holder that it would not sue was not sufficient to divest court of declaratory judgment jurisdiction because the patent holder had engaged in a course of conduct that indicated a willingness to act to the contrary); see Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1299-1300 (Fed. Cir. 2009) (finding that a proffered covenant not to sue did not strip the court of declaratory judgment jurisdiction, but cited decisions where covenants that precluded both past and present infringement actions were sufficient to do so).

The facts of the present case weigh in favor of finding that defendants' multiple covenants not to sue preclude plaintiffs from maintaining declaratory judgment jurisdiction. In SanDisk, the parties engaged in a protracted conflict over claimed patent rights. SanDisk, 480 F.3d at 1374-77. Over the course of several months, the parties met and vigorously defended their legal rights, including undertaking in-depth infringement analyses by both parties. Id. at 1375-76. Moreover, the proffered covenant in SanDisk came at the end of those discussions, and consisted of a verbal assurance that the defendant STMicroelectronics had no intention to sue SanDisk. Unlike in SanDisk, the covenants at issue in this case are written and memorialized and cover both past, present, and future infringement claims with respect to the HERO process generally, and specifically the Bechtel project and Pio Pico Energy Center project processes. See Revolution Eyewear, 556 F.3d at 1299-1300 (citing similar decisions). Finally, the covenants not to sue in this case merely affirm defendants' repeated assertions[3] that they do not believe that the HERO Patents infringe the '804 Patent.

Plaintiffs continue to argue that "there is not just one HERO process, but a wide number of HERO treatment process variations which have been used, are using [sic] used, have been

_____
[3] In the sworn affidavit of Mark Boone, he denied ever telling Bechtel that it would be subject to legal action for infringement of the '804 Patent if it implemented plaintiffs' HERO process. See (ECF No. 8-1.)

proposed, and are being proposed currently." (ECF No. 35 at 6.) This is the same argument advanced in opposition to the last two motions to dismiss. Defendants offered covenants not to sue with respect to all the projects plaintiffs alleged could infringe the '804 Patent, including the most recent allegations with respect to the Pio Pico Energy Center project in the second amended complaint. Plaintiffs point to Exhibit 7 to their complaint, (ECF No. 31-7), which is a claims chart purportedly showing the "nexus" between the Pio Pico Energy Center proposal and the '804 Patent. This chart, however, is contradicted by the most recent covenant not to sue, which releases any and all infringement claims defendants may have against plaintiffs with respect to the process proposal at the Pio Pico Energy Center. (ECF No. 34-1.) The chart is also contradicted by the prior covenant not to sue which specifically waived the right to assert claims that any process "covered by the claims in the HERO Patents" infringes the '804 Patent. (ECF No. 30-1.) If both the process itself and any process covered by the claims of the HERO patents are subject to covenants not to sue, plaintiffs' argument lacks merit. As discussed below, even if plaintiffs believe that they could be subject to an infringement suit, there is no active case or controversy sufficient to give rise to declaratory judgment relief.

Despite the assurances given by defendants, plaintiffs continue to argue that the covenants not to sue do not remove the "cloud of continuing infringement threats" made by defendants. Plaintiffs, however, point to no specific allegation or evidence of continuing threats, and continue to rely upon the same documents cited in opposition to the last two motions to dismiss.

In light of defendants' assurances that they will not bring suit for infringement with respect to the Bechtel project or the Pio Pico Energy Center project process variations and plaintiffs' concession that the covenant moots the basis for declaratory judgment relief with

respect to the Bechtel project, plaintiffs' declaratory judgment claim of noninfringement (Count I) will be dismissed.

**B.** **Counts II (Invalidity) and III (Unenforceability)**

As discussed above, plaintiffs did not make a sufficient showing to establish that an active case or controversy exists sufficient to give rise to declaratory judgment jurisdiction. Without an active case or controversy with respect to defendants' patent rights in the '804 Patent, plaintiffs' claims of invalidity and unenforceability must also be dismissed. Invalidity and unenforceability are defenses to a claim of infringement. 35 U.S.C. § 282(b)(1), (2) (setting forth defenses to an infringement claim). Until plaintiffs can establish that there is a real and immediate threat that defendants will take action to enforce their rights with respect to the '804 Patent, plaintiffs cannot continue to assert defenses to such claims. Therefore, all three claims will be dismissed.

**C.** **Declaratory Judgment Jurisdiction**

Even if the court found that the covenants not to sue were insufficient to strip the court of subject-matter jurisdiction, the facts alleged by plaintiffs are not sufficient to establish declaratory judgment jurisdiction in light of controlling precedent.

**1.** **Decisions Cited by Plaintiffs**

Plaintiffs' responses to previous motions to dismiss relied upon the decisions in <u>Arris Group</u> and <u>Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731 (Fed. Cir. 1988), *overruling recognized by* <u>Arris Group</u>, 639 F.3d at 1375 n. 5. Although the Court of Appeals for the Federal Circuit in both decisions found that an Article III case or controversy existed, the facts of those cases are inapposite to the present case. First and foremost, neither case involved a plaintiff that claimed patent protection for the allegedly infringing activity. <u>See Arris Group</u>, 639

F.3d at 1371-73; <u>Arrowhead</u>, 846 F.2d at 733-34. Plaintiffs in this case have valid patents for the HERO process. In both <u>Arrowhead</u> and <u>Arris Group</u>, the alleged facts evidenced a real and immediate controversy unlike the facts alleged in the present case.

In <u>Arrowhead</u>, the defendant, Ecolochem, Inc. ("Ecolochem"), engaged in several threatening activities aimed at enforcing its patent rights against the plaintiff, Arrowhead Industrial Water, Inc. ("Arrowhead"). Ecolochem's activities included: (1) filing suit against a third party for infringing the patent in question; (2) sending letters to two of Arrowhead's potential customers indicating that Arrowhead's process was not licensed by Ecolochem; (3) sending a letter inclosing a copy of its patent to Arrowhead and demanding that Arrowhead confirm within twenty days that it had discontinued any unauthorized practice; and (4) explicitly threatening patent infringement litigation against Arrowhead. <u>Arrowhead</u>, 846 F.2d at 733.

In <u>Arris Group</u>, the defendant, British Telecommunications PLC ("BT"), sent a letter accusing a customer of the plaintiff, Arris Group, Inc. ("Arris"), of infringing various BT patents. <u>Arris Group</u>, 639 F.3d at 1372. Pursuant to its allegation of infringement, BT sought to begin licensing discussions. <u>Id.</u> As proof of its accusations, BT provided Arris's customer with a 118-page document specifically outlining the alleged infringements. <u>Id.</u> BT, Arris, and the customer met no fewer than five times over the course of almost two years, with each side repeatedly responding to the other's position, and attempting to work out a licensing agreement. <u>Id.</u> at 1372-73. Plaintiffs point to no such discussions in the present case, and have not cited decisions with facts sufficiently similar to the present case to warrant declaratory judgment jurisdiction with respect to count I of the second amended complaint.

Unlike the defendants in <u>Arris Group</u> and <u>Arrowhead</u>, defendants in this case took few actions, none of which rise to the level of asserting their rights under the '804 Patent. Defendants

never directly contacted plaintiffs, and did not meet with plaintiffs to establish their adverse legal positions. Defendants never requested that plaintiffs provide evidence of noninfringement, and did not provide plaintiffs with evidence that the HERO process infringes the '804 Patent. These are the kind of activities that the <u>Arrowhead</u> and the <u>Arris Group</u> defendants engaged in to assert their patent rights against alleged infringers and upon which the courts relied in finding subject-matter jurisdiction. The events alleged in plaintiffs' second amended complaint took place more than two years ago; and despite repeated attempts to amend their complaint, plaintiffs fail to allege any other specific incidents in which defendants have asserted their right to bring suit for infringement. To the contrary, defendants continue to offer covenants not to sue in which they explicitly waive their right to assert such claims. Taken together, the actions described in the second amended complaint do not establish a present controversy between plaintiffs and defendants.

### 2. The <u>Matthews</u> Decision

In <u>Matthews International Corp. v. Biosafe Engineering, LLC</u>, 697 F.3d 1322 (Fed. Cir. 2012), the Court of Appeals for the Federal Circuit declined to find subject-matter jurisdiction on facts similar to the present case. The plaintiff, Matthews International Corp. ("Matthews"), brought suit seeking a declaratory judgment of noninfringement with respect to five method patents held by defendant, Biosafe Engineering, LLC ("Biosafe"). <u>Id.</u> at 1326. In its amended complaint, Matthews alleged that representatives of Biosafe had "'wrongly accused Matthews of patent infringement and ha[d] made false accusations about Matthews to [Matthews'] customers, potential customers, and employees.'" <u>Id.</u> The accusations included a

> "bad faith whispering campaign in the funeral home marketplace, by making accusations and veiled threats to potential customers that [Matthews' products] infringed Biosafe's patents. Matthews asserted, moreover, that one of its

customers . . . told Matthews that it was reluctant to buy [their] equipment because of the accusations made by Biosafe."

Id. at 1327. In the context of facts similar to the present case, the court determined that declaratory judgment jurisdiction did not exist. The court analyzed the subject-matter jurisdiction question and determined that Matthews had not established an immediate and real controversy between the parties. Id. at 1328-33 (citing MedImmune, 549 U.S. at 127).

The court concluded that Matthews failed to set forth an immediate controversy because there was no evidence that Matthews' equipment would ever be used in a process that would infringe (either directly or indirectly) Biosafe's patents. Id. at 1328-30. This determination was based upon the fact that although Matthews had sold its equipment to customers, the equipment had yet to be installed in the customers' facilities. The court noted that the equipment could be used in a noninfringing way. Id. Based upon these factors, the court concluded that Matthews had failed to take concrete steps toward infringing Biosafe's patents. The court found that Matthews failed to establish a real controversy, given that Matthews' equipment "can be operated using a variety of process parameters, some of which would not infringe the Method Patents." Id. at 1330-31. Notably, the court did not acknowledge the "whispering campaign" as being relevant to its holding.

### i.      Immediacy

Like in Matthews, plaintiffs fail to establish that they took concrete steps to engage in conduct that could expose them to immediate infringement liability. Plaintiffs' equipment was never installed or implemented in the RCEC. Therefore, at least with respect to the Bechtel project, there is no chance that plaintiffs exposed themselves to potential liability for infringement. Id. at 9. Plaintiffs' HERO process can clearly be used in a noninfringing way, since defendants were willing to offer covenants not to sue based upon several proposed uses of

the HERO process. Plaintiffs also alleged that the process was used "globally in a multitude of industries including power generation, petrochemical, and microelectronics," yet they do not allege that any of these uses are currently subject to an infringement suit, or threat of suit, by defendants. (ECF No. 31 ¶ 15.)

Despite its widespread use, plaintiffs do not make specific allegations that defendants have challenged the HERO process in any other context. Plaintiffs' main assertion with respect to the Bechtel project, along with their vague allegations based on information and belief that defendants continue to threaten infringement actions, were all flatly contradicted in Mark Boone's affidavit and the four covenants not to sue. (ECF No. 8-1.) When assessing a factual challenge to a claim of subject-matter jurisdiction, the court is free to weigh the evidence contained in materials outside the pleadings. Mortensen, 549 F.2d at 891. To that end, plaintiffs' bare assertions of ongoing wrongful conduct based on information and belief are not sufficient to plead an immediate controversy, particularly in light of Mark Boone's denial. See id. (recognizing the court's "substantial authority" to weigh evidence in the context of a Rule 12(b)(1) factual attack). Even if the court were to assume that Mark Boone did make the alleged statements to Bechtel, they are insufficient to establish an immediate harm, since the HERO process was not ultimately implemented at the RCEC, and no other threats were alleged.

To the extent that plaintiffs can make any other claims against defendants with respect to the Bechtel project, those claims merely amount to purely economic harm based upon plaintiffs not being awarded the RCEC contract. Claims of economic harm do not establish an immediate controversy sufficient to give rise to declaratory judgment jurisdiction. See Arris Group, 639 F.3d at 1374. Plaintiffs allegedly utilized their HERO process for fifteen years, and did not allege that they were previously threatened with infringement, which indicates that the HERO process

can be used in a noninfringing way. <u>Matthews</u>, 2012 WL 4354663 at 8-9. Under these circumstances, plaintiffs fail to plead an immediate controversy.

### ii.     Reality

With respect to the reality requirement, plaintiffs contend that there is "not just one HERO process, but a wide number of HERO treatment process variations which have been used, are using [sic] used, have been proposed, and are being proposed currently." (ECF No. 31 ¶ 18.) With respect to those HERO process variations that are already in use, plaintiffs provide no evidence that they are subject to threats of infringement. Plaintiffs conceded in prior briefing submitted to the court that "[t]here is no other patent action pending against Plaintiffs as regards the '804 OPUS patent, nor any indication that Defendants are contemplating a patent infringement action against Plaintiffs." (ECF No. 15 at 6.) With respect to those variations of the HERO process that have been proposed or will be proposed, plaintiffs merely allege, based upon information and belief, that defendants "issued such threats" of infringement. This assertion is precisely the sort of "'fluid and indeterminate'" situation that <u>Matthews</u> found was not subject to declaratory judgment jurisdiction. <u>Matthews</u>, 695 F.3d at 1330-31. Apart from the vague nature of these allegations, there cannot be a real controversy where plaintiffs seek declaratory relief with respect to future hypothetical variations of the HERO process. <u>MedImmune</u>, 549 U.S. at 127. Without more detail about actual threats of harm, granting declaratory relief in the present case would amount to issuing an improper advisory opinion. <u>Id.</u> This court, therefore, lacks subject-matter jurisdiction to address plaintiffs' declaratory judgment claims, and those claims must be dismissed. The court notes, however, that to the extent that defendants could, in the future, assert claims of infringement against plaintiffs' HERO process in derogation of the four

covenants not to sue, this dismissal will be without prejudice to seeking a declaratory judgment if that occurs.

### D. Tortious Interference Claim

#### 1. Relation Back

Defendants argue that plaintiffs' newly asserted claim for tortious interference is time barred by the applicable two-year statute of limitations, which defendants maintain expired on September 1, 2012—two years after plaintiffs learned of the meeting between defendants and Bechtel. See 42 PA. CONS. STAT. ANN. § 5524(7); Maverick Steel Co., L.L.C. v. Dick Corp./Barton Malow, 54 A.3d 352 (Pa. Super. Ct. 2012). Plaintiffs respond that their claim relates back to the facts alleged in the original complaint, and was therefore timely filed pursuant to Federal Rule of Civil Procedure 15(c).

Rule 15(c) provides that an amendment relates back to the date of the original pleading when, among other things, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). Relation back is applicable in situations where the amended claim shares a "'common core of operative facts'" with the original pleading. USX Corp. v. Barnhart, 395 F.3d 161, 167 (3d Cir. 2004) (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 310 (3d Cir. 2004)). In addition to an identity of transaction, courts also inquire into "whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS, AND ADAM N. STEINMAN, FEDERAL PRACTICE & PROCEDURE § 1497 (3d ed.).

> The insistence on notice does not mean that the courts will bar relation back simply because the amended pleading deviates markedly from the original. . . .

> The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading. . . . Indeed, an amendment that states an entirely new claim for relief will relate back as long as it satisfies the test embodied in Rule 15(c)(1)(B).

Id.

Plaintiffs assert that their allegations of tortious interference arise from the same conduct, transaction, or occurrence set forth in the original pleading, and cite to the specific paragraphs in the original complaint that detail the alleged threats of infringement made with respect to the Bechtel project. (ECF No. 35 at 4 n.1.) On its face, plaintiffs' newest claim undoubtedly meets the identity of conduct, transaction or occurrence requirement of Rule 15(c)(1)(B) in that the original complaint alleged that a representative of defendants made statements threatening patent infringement if Bechtel choose to use plaintiffs' HERO process. E.g. ECF No. 1 ¶¶ 30-40.

Defendants argue that the tortious interference claim does not arise from the same conduct or transaction as the events alleged in the original complaint because "the averments in the Second Amended Complaint go beyond those set forth in the Complaint." (ECF No. 39 at 3.) The original complaint details the alleged conduct of Mark Boone with respect to the threats of infringement related to the Bechtel project. Plaintiffs' allegation that Bechtel did not choose plaintiffs for the project based upon defendants' conduct is not sufficient to take the amendment outside the scope of Rule 15. Indeed, the conduct at issue involves the same individuals and facts as the conduct alleged in the original complaint, and therefore falls within the same "common core of operative facts." Plaintiffs' detailed allegations in the original complaint were sufficient to put defendants on notice of the claim asserted in the second amended complaint since the underlying factual scenario is exactly the same, albeit under a different theory of recovery.

Defendants argue that the new claim does not relate back on the ground that plaintiffs waived the right to pursue the claim. Defendants point out that plaintiffs made a business decision not to assert the tortious interference claim in the first place. As indicated above, Rule 15 does not prohibit the addition of a new and previously unpled claim for relief; therefore, this argument lacks merit. Defendants fail to support their waiver argument with citation to any relevant caselaw. The one decision cited by defendants, Stichting Pensioenfonds ABP v. Countrywide Financial Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011), is inapposite because the plaintiff in that case failed to raise its relation back argument in response to the defendants' motion to dismiss. Id. In the present case, plaintiffs asserted the relation back argument in response to defendant's motion to dismiss. Defendants cite no decision in which a court found that a plaintiff's decision to pursue a claim that was not initially pled can never relate back to the initial complaint. Defendants' motion to dismiss with respect to the tortious interference claim, therefore, will be denied.

### 2. Supplemental Jurisdiction

Defendants argue in the alternative that the court should not exercise supplemental jurisdiction over plaintiffs' state law claim on the ground that all the federal question claims have been dismissed. When a district court has "dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over any remaining state law claim. 28 U.S.C. § 1367(c). The determination whether to retain jurisdiction is "purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Courts should base their determination upon "considerations of judicial economy, convenience, and fairness to litigants." New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1505 (3d Cir. 1996) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27

(1966)). The Court of Appeals for the First Circuit has acknowledged that "'[t]he running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction.'" O'Connor v. Commw. Gas Co., 251 F.3d 262, 273 (1st Cir. 2001) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)); but see Burns-Toole v. Byrne, 11 F.3d 1270, 1276 (5th Cir. 1994) (affirming dismissal of pendant state law claims even though the statute of limitations had run on those claims). State law claims in federal suits dismissed for lack of jurisdiction may be asserted in state courts pursuant to 42 Pa. Cons. Stat. § 5103(b). Williams v. F.L. Smithe Mach. Co., Inc., 577 A.2d 907, 910 (Pa. Super. Ct. 1990); 910 (Pa. Super. Ct. 1990) (where federal court dismisses claims for lack of jurisdiction, subsequent action in state court brought pursuant to section 5103 is considered to have been filed at time original federal suit was filed); Kurtz v. Lockhart, 656 A.2d 160, 163 (Pa. Commw. Ct. 1995) (where pendant state claims are dismissed by federal court, the proper avenue to bring those claims in state court is for the plaintiff to comply with the transfer provisions set forth in section 5103(b)(2)).

In light of the dismissal of plaintiffs' declaratory judgment claims, the court will not retain jurisdiction over the tortious interference claim. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (noting that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). Courts facing similar circumstances have declined to retain jurisdiction over state law claims even in cases where the statute of limitations had expired. Kach v. Hose, No. 06-1216, 2008 WL 4279799, at *8-9 (W.D. Pa. Sept. 12, 2008) (declining to exercise supplemental jurisdiction over state law claims in case where plaintiff's

claims were untimely, even though defendants failed to raise statute of limitations defense).

Because the court found that plaintiffs' tortious interference claims relate back to the date of the

initial filing of the present action, those claims will be dismissed without prejudice to them being

transferred to state court pursuant to § 5103. See Estate of Fortunato v. Handler, 969 F. Supp.

963, 974 (W.D. Pa. 1996); Kurtz, 656 A.2d at 163; Williams, 577 A.2d at 910. An appropriate

order follows.

## ORDER

AND NOW, this 31st day of July, 2013, upon consideration of defendants' motion to

dismiss pursuant to Rule 12(b)(1), (ECF No. 33), plaintiffs' response in opposition, (ECF No.

35), and defendants' reply, (ECF No. 39), and for the reasons set forth in the accompanying

memorandum opinion, it is HEREBY ORDERED that defendants' motion with respect to counts

one, two and three will be GRANTED, and plaintiffs' second amended complaint will be

dismissed without prejudice to the extent that plaintiffs may file a new complaint if defendants,

in the future, threaten to assert or assert claims of infringement in derogation of the four

covenants not to sue.

It is FURTHER ORDERED that the court finds that plaintiffs' claim for tortious

interference relates back to the date of the initial filing of plaintiffs' complaint in this court and

will GRANT the motion to dismiss with respect to count four without prejudice to it being

asserted in an appropriate Pennsylvania court. The clerk shall mark this case closed.

SO ORDERED.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge